# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 2:10-CR-1128-11 |
| | § | |
| | § | (CIVIL ACTION NO. 2:14-CR-55) |
| ORLANDO GARCIA; aka GARCIA | | |

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE, AND DENYING CERTIFICATE OF APPEALABILITY

Defendant Orlando Garcia (Garcia) filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. D.E. 689. Garcia challenged his life sentence for conspiracy to possess with intent to distribute a controlled substance, more than 500 grams of methamphetamine. The United States filed a response and Garcia filed a reply. D.E. 713, 718, 719. After considering the pleadings and the evidence, Garcia's § 2255 motion to vacate, set aside or correct sentence is denied and he is denied a certificate of appealability.

## I. PROCEDURAL HISTORY

Garcia was one of fourteen co-defendants charged in a multiple count indictment in December 2010. D.E. 14. He was charged in Count Five with conspiracy to possess with intent to distribute more than 500 grams of methamphetamine, approximately 5.66 kilograms of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A). *Id.* His co-defendants were Preston Mascorro, Karlos Buchot (Buchot), Jerome Aranda, and Johnny Joe Guerra (Guerra).

Garcia was arrested and made his initial appearance in federal court in December 2010. He was appointed counsel at that time. Minute Entry Dec. 14, 2010, D.E. 77. He was denied bond pending trial. D.E. 106.

A superseding indictment was returned in January 2011, but it did not change the count filed against Garcia. D.E. 131. A Second Superseding Indictment was issued in April 2011, that added co-defendants, Rudy Rodriguez (Rodriguez) and Jose Ledezma to Count Five. D.E. 273.

Garcia was tried over two days in February 2012. He was convicted of conspiracy to possess with intent to distribute more than 500 grams of methamphetamine. The primary evidence at trial was the government wiretaps of conversations between Buchot, a high level Raza Unida (RU) member who was in prison and other gang members, both in and out of prison. Buchot obtained an illegal cell phone while incarcerated, as did other members of RU. Buchot contacted Garcia numerous times by telephone and text message in an effort to sell methamphetamine that could be brought in from Mexico.

The jury heard testimony from Agent Teed, an agent with Homeland Security, that described RU as a prison gang. D.E. 595, pp. 58-60. Teed testified regarding the leadership structure of RU, both inside prisons and outside. *Id.*, p. 62. Buchot was incarcerated in the McConnell unit of the Texas Department of Criminal Justice in Beeville, Texas. Teed testified that Rodriguez was in charge of RU at the McConnell Unit, but the identity of his right hand man varied over time. Buchot was Rodriguez' right hand man during 2010. *Id.*, pp. 63-65. Outside of the prison, there was also a leadership structure for the Corpus Christi area. According to Teed, Guerra was the lieutenant at the time with a number of sergeants under him. Teed testified that he believed Garcia was one of those sergeants based upon his investigation. *Id.*, p. 81, 175. Teed reviewed a roster from an RU gang meeting and identified Garcia, Guerra, and Plazola on the roster. *Id.*, pp. 90-91. He also identified a gang "subpoena," that was found during the execution of search warrants in this case. *Id.*, p. 92-93. Teed further identified some photographs that

depicted Garcia, Guerra, and other RU members. Garcia and Guerra were displaying their RU tattoos in one of the photographs. *Id.*, p. 95-96.

Teed testified that the government obtained a warrant to intercept Buchot's phone calls and text messages for the period from March 26, 2010, through April 23, 2010. Over 20,000 sessions were recorded. Each call or text was a single session. *Id.*, p. 96. During the investigation, the government executed a search warrant on a house on Allencrest Street in Corpus Christi. *Id.*, p. 139. During the search, the government recovered body armor, guns and multiple bundles of methamphetamine. *Id.*, pp. 141-44. The quantity of methamphetamine found was 5,661 net weight grams of methamphetamine. The methamphetamine was 90.4% pure.

The Allencrest house had been the residence of several of Garcia's co-defendants, Botello, Ornelas, Alejandro, Gardiola, and Plazola. *Id.*, p. 158. Teed did not have any surveillance evidence that Garcia visited the Allencrest house in the weeks before the search warrant was executed, no evidence that the vehicles found at the residence had any connection to Garcia, and none of Garcia's fingerprints were found on the drugs recovered from Allencrest. *Id.*, p. 161-67.

A search warrant was also executed at Garcia's home on Cornwall Street in Corpus Christi on May 13, 2010. *Id.*, p. 184. A Colt .38 was found in a bedroom, the room in which Garcia's wallet and other identifying information was found. *Id*. Three bags of crystal rock-like substance were found in the same bedroom. *Id.*, p. 198. The government's chemist testified that the methamphetamine seized from the Cornwall Street residence had a net weight of 77 grams with only a trace of methamphetamine, less than 1%. D.E. 596, p. 28. The methamphetamine from Cornwall Street was cut with two substances, one of which was different from that used in the Allencrest methamphetamine. *Id*.

The defense case consisted of additional wiretap evidence and Garcia's testimony. Garcia testified he was a member of RU, wanted out of the gang, and although he talked to Buchot and had to do what Buchot said, he did not intend to participate in trafficking methamphetamine. Garcia also testified that he is a recovering drug addict, although he did not use methamphetamine. He has diabetes and his kidneys are failing. He denied having "rank" in RU. After a day and a half of testimony, the jury convicted Garcia of Count Five of the Second Superseding Indictment.

The Probation Department prepared a Presentence Investigation Report (PSR). D.E. 540. Garcia filed objections to the PSR and a motion to continue sentencing. D.E. 544, 549. The final PSR calculated Garcia's base offense level at 38 based upon 5209.76 grams or 5.21 kilograms of methamphetamine and 77 grams of methamphetamine. *Id.*, ¶ 38. Seventeen firearms were found adjacent to the methamphetamine found at the Allencrest residence and Garcia had another firearm at his own residence where 77 grams of methamphetamine was found. The firearms enhanced his base offense by two levels. His offense level was additionally enhanced because one of the objects of the offense was distribution of a controlled substance in prison and because the methamphetamine originated in Mexico. His offense level was further enhanced for his role as a manager/supervisor in the conspiracy. Garcia's total offense level after enhancements was 47. *Id.*, ¶¶ 39-49.

Garcia's criminal history category was III. *Id.*, ¶ ¶ 52-58. His guideline sentencing range was life imprisonment. *Id.*, ¶ 74.

Sentencing was held on May 24, 2012. D.E. 557. Defense counsel objected to the drug quantity related to the drugs seized from the Allencrest location, to the firearm enhancement, manager/supervisor role, and for importation of the drugs from Mexico. Based upon the evidence

at trial, the Court overruled all but one of the objections. D.E. 597, pp. 4-8. The Court sentenced Garcia to the guideline range sentence of life imprisonment, to run concurrently with his federal sentence for felon in possession of a firearm in Cause No. 2:10-CR-549, supervised release of five years, and a special assessment of $100. *Id*., pp. 13-14. The Court advised Garcia of his right to appeal. *Id*., p. 14.

The Fifth Circuit affirmed Garcia's conviction and sentence after holding that the evidence was sufficient. *United States v. Garcia*, No. 12-40631 (5th Cir. April 5, 2013) (per curiam) designated unpublished). Garcia timely filed the present motion.

## II.  MOVANT'S ALLEGATIONS

Garcia alleges that he was absent during portions of the trial which violated his constitutional rights. D.E. 689, p. 5. Next Garcia claims that the district court, prosecution and defense counsel denied him his right to compulsory process to obtain witnesses for trial. He further claims that defense counsel did not have subpoenas issued for three character witnesses. *Id*., p. 6. Garcia also claims that counsel provided ineffective assistance by failing to raise a speedy trial issue, and complains of proposed but not actual conduct by counsel, such as her original intent to have the entire indictment read to the jury, rather than only Count Five. *Id*., pp 8-13.

Garcia further complains that counsel failed to

1) file pretrial motions,
2) object to the peace treaty between gangs,
3) object to the testimony of Agent Breese on gang behavior,
4) object to the characterization of Government Exhibit 4 as a membership roster,
5) object to chain of custody issues regarding several pieces of government evidence such as the peace treaty, membership roster, and wiretap recordings,
6) object to Agent Teed's qualifications as an expert witness,
7) conduct any pretrial discovery,
8) listen to the audiotapes or read transcripts of telephone conversations obtained via wiretap,

9) request witness statements or grand jury testimony,
10) file a Bill of Particulars seeking detailed evidence including *Brady* material,
11) be familiar with jury selection procedures,
12) ask questions regarding gang membership during voir dire,
13) request additional peremptory challenges,
14) seek attorney conducted voir dire or use a jury questionnaire,
15) challenge the legality of the wiretaps,
16) move to dismiss the indictment,
17) interview witnesses, perform independent research, cross-examine key prosecution witnesses,
18) develop arguments for sentencing, and
19) develop a defense theory of the case.

*Id.*, pp. 8, 14-17.

Garcia additionally claims counsel was ineffective on appeal by raising the weakest possible single issue, sufficiency of the evidence.

## III. ANALYSIS

### A. 28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam).

### B. Alleged Violation of Garcia's Right to Be Present During Trial

Garcia claims he was absent during portions of his trial and his absence violated his Constitutional right to be present. A criminal defendant is "guaranteed the right to be present at

any stage of the criminal proceeding that is critical of its outcome if his presence could contribute to the fairness of the proceeding." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987); *Faretta v. California*, 422 U.S. 806, 819 n. 15 (1975). In some cases, the abridgement of the right to be present may constitute harmless error. *Rogers v. United States*, 422 U.S. 35, 40 (1975); *United States v. Statton*, 649 F.2d 1066, 1080 (5th Cir. 1981) (Unit A). The right to be present is rooted in both the confrontation clause and in the due process clauses of the Constitution. *United States v. Gagnon*, 470 U.S. 522, 526 (1985). The exclusion of the defendant should be considered in light of the entire record. *Id.* (citing *Snyder v. Massachusetts*, 291 U.S. 97 (1934)).

Garcia was absent for approximately ten minutes during recesses that occurred during this two day trial. *See* D.E. 595, pp. 73-76, 133-38. During Garcia's first absence, the Court discussed software that would coordinate the scrolling of the transcript of audio recordings and actual tapes, but that software was not available to the Court. The Court informed defense counsel that she could play the audio with the interpreter or show the transcripts. The audio was in Spanish. *Id.*, p. 74. The discussion began at 1:01:12 p.m. and continued until 1:07:06 p.m.

Later during the afternoon recess, the Court asked defense counsel to describe the subject matter of the expected testimony in the defense case. D.E. 595, p. 133-34. Counsel responded that witnesses were expected to testify regarding Garcia's health and economic circumstances. courtroom. The discussion of witnesses began at 3:27:54 and continued until 3:32:37 p.m.

An error in proceeding without the defendant is harmless if the Court finds beyond a reasonable doubt that his absence did not prejudice his substantial rights. *United States v. Akipo*, 944 F.2d 206, 208 (5th Cir. 1991); *United States v. Gradsky*, 434 F.2d 880, 883 (5th Cir. 1970). "[T]he presence of a defendant must bear a reasonably substantial relationship to the opportunity

to defend. The Constitution does not assure 'the privilege of presence when presence would be useless, or the benefit but a shadow.'" *Gradsky*, 434 F.2d at 883 (quoting *Stein v. United States*, 313 F.2d 518, 522 (9th Cir. 1962)). Garcia does not explain how his absence during counsel's conversations with the Court affected the fairness of the proceedings or how he was prejudiced by his brief absences during court recesses. The Court finds that his absence did not affect his substantial rights. *See United States v. Lampton*, 158 F.3d 251, 255 (5th Cir. 1998);[1] *United States v. Huntley*, 535 F.2d 1400, 1404 (5th Cir. 1976) (harmless error for defendant to be absent at rendition of judgment after bench trial).

## C.     Denial of Right to Compulsory Process

Garcia claims that his constitutional right to compulsory process to secure attendance of witnesses was violated by this Court and the prosecution. Garcia failed to state facts to support his claim that the Court and government interfered with his ability to subpoena witnesses. His failure to state the facts on which his claim relies renders it conclusory. Conclusory allegations on critical issues in a § 2255 proceeding are insufficient to raise a constitutional issue. *United States v. Woods*, 870 F.2d 285, 288 n. 3 (5th Cir. 1989); *see also United States v. Jones*, 614 F.2d 80 (5th Cir. 1980) (failure of movant to state specific facts, "is insufficient to state a constitutional claim.").

## D.     Ineffective Assistance of Counsel

Garcia alleges that his counsel did not represent him adequately and was constitutionally ineffective. During trial, this Court noted during a break

20 Now, while we're doing housekeeping matters, it has
21 become apparent to me in -- since I want to comment on any

---

[1]  Defendants claimed their constitutional right to be present was violated when they were not present for the hearing on their motion for new trial. The Fifth Circuit held that their absence was not harmful even though testimony was taken. The issues were such that neither defendant could have testified and their presence was not necessary to the fairness of the proceeding. *Id.*

22 possible future 2255, if any, if there's a conviction that
23 Mr. Garcia is really running his own defense here. However --
24 whatever direction it's going in, he's the machine behind it
25 and it occurred to me there Ms. Villarreal-Kuchta is doing
1 whatever he tells her to do. So I think that's an important
2 finding for me to make at this point and I see nothing to
3 dispute that.

D.E. 595, pp. 193-94.

1.  *Standard for claims of ineffective assistance of counsel*

Generally, an ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. *Id.* This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under *Strickland,* the movant must demonstrate that counsel's error led to an increase in the length of his imprisonment. *Glover v. United States*, 531 U.S. 198, 203 (2001); *United States v. Herrera*, 412 F.3d 577, 581 (2005).

If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

"[E]ntitlement to effective assistance does not end when the sentence is imposed, but extends to one's first appeal of right." *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (citing *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998)). Counsel's appellate performance is judged under the same *Strickland*, standard applicable to trial performance. 466 U.S. 668 (1984). "'When a claim of ineffective assistance of counsel is premised on counsel's failure to raise an issue on appeal, 'the prejudice prong first requires a showing that [the Fifth Circuit] would have afforded relief on appeal.'" *United States v. Reinhart*, 357 F.3d 521, 530 (5th Cir. 2004) (quoting *United States v. Phillips*, 210 F.3d 345, 350 (5th Cir. 2000)).

2. *Failure to interview or subpoena witnesses*

Garcia claims that counsel failed to interview prospective witnesses, including unnamed indicted co-defendants. Garcia claims that those witnesses would have exonerated him, but he provides no evidence that these unnamed witnesses would have spoken to counsel or would have testified favorably to him. Garcia also complains that counsel failed to subpoena three character witnesses, a physician, and several co-defendants. Counsel's affidavit states that she spoke to lawyers for three unnamed co-defendants and was told that each of them would have implicated Garcia in the conspiracy and drug trafficking of which he was convicted. Counsel testified that her decision not to call the co-defendant witnesses was one of trial strategy. D.E. 710, pp. 1-2.

Garcia has not identified the witnesses he claims counsel should have subpoenaed, the nature of each witnesses' testimony, or how the witness would have helped his case. In general, "complaints of uncalled witnesses are not favored" in post-conviction proceedings. *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 1997); *see also United States v. Fields*, 761 F.3d 443, 461 (5th Cir. 2014). "To prevail on a claim of uncalled witnesses, 'the petitioner must name the

witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.'" *Fields*, 761 F.3d at 461. "[W]hen 'the only evidence of a missing witnesses' [sic] testimony is from the defendant, this Court views the claims of ineffective assistance with great caution.'" *Harrison*, 496 F.3d at 428 (quoting *Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001)). A defendant's failure to present some evidence from the uncalled witness regarding that witness's potential testimony and willingness to testify is usually fatal to an ineffective assistance of counsel claim. *Id.*; *see also Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir.1985).

Garcia's bald conclusion that there was favorable testimony available but Counsel did not find it is not evidence to support his claim. Garcia's claim fails on the grounds that he has not provided the evidence required to establish that the witnesses he alleged counsel should have called to testify would have reasonably made a difference in the outcome of his case.

3. *Failure to raise speedy trial objection*

A criminal defendant has a constitutional and statutory right to a speedy trial. 18 U.S.C. § 3161; *Barker v. Wingo*, 407 U.S. 514, 530 (1972) (setting out factors to be considered in determining whether a Constitutional speedy trial violation has occurred). When deciding a Sixth Amendment speedy trial issue, the court should consider the following: 1) the length of delay, 2) the reason for delay, 3) the defendant's assertion of the right, and 4) prejudice to the defendant.

Counsel's affidavit stated that any delays in Garcia's trial were necessary to prepare for trial. This is a fourteen defendant conspiracy case that involved multiple criminal activities including drug trafficking, attempted murder, and robbery. The original indictment included eight counts. D.E. 14. The indictment was superseded two more times before Garcia's trial. D.E.

273. Although only one Count of the indictment named Garcia, according to counsel's affidavit, the printed discovery was 5-6 feet tall. In addition to transcripts of the wiretap evidence, counsel swears that she and Garcia listened to all of the audio-recordings that implicated Garcia. D.E. 710-1, pp. 1-2.

Garcia was not permitted bond. D.E. 106. He was tried February 12, 2012, fourteen months after his arrest. His counsel filed several motions for continuance of the trial setting. D.E. 182, 208, 446, and made an oral motion on January 3, 2012, that was granted. In addition to the motions filed by his counsel, Garcia's trial was delayed by motions to continue filed by counsel for his thirteen co-defendants. D.E. 178, 179, 180, 183, 184, 185, 188, 197, 205, 207, 210, 211, 212.

Although Garcia complains of the delay in his trial and his counsel's failure to file a speedy trial motion, he does not state at what point in the proceedings he claims Counsel should have filed a speedy trial motion or whether he requested that counsel do so. *See* D.E. 689, pp. 8, 14. The record reflects only counsel's testimony that the delay was necessary to prepare for trial and that at the time, Garcia agreed. Additionally, Garcia does not state how he was prejudiced by the delay. No ineffective assistance is shown.

4. *Failure to investigate*

a. <u>Failure to listen to or review wiretap audiotapes and transcripts</u>

Garcia alleges that counsel failed to listen to the audiotapes or read the wiretap transcripts. His assertion is contradicted by counsel's affidavit which states that she and Garcia listened to the audiotapes of the wiretap conversations together. D.E. 710-1, pp. 1-2. Garcia's assertion is further contradicted by evidence at trial that counsel sought to explore various translations of Spanish language words on the audiotapes. The transcripts were in English.

Counsel could not have been aware of the translation issue had she not reviewed both the audiotapes and the transcripts. Counsel also identified particular transcripts she intended to use as exhibits at trial including both the audiotape and the transcripts. D.E. 497 (Exhibit List).

b. Failure to conduct pretrial discovery

Garcia contends that counsel did not conduct any pretrial discovery. Again, this claim is contradicted by Counsel's affidavit and by the trial transcripts. Counsel described the volume of transcripts in her affidavit and the Court held hearings on counsel's efforts to obtain pretrial discovery and to allow Garcia to review that same discovery. During a pretrial conference, Counsel discussed discovery issues with the Court and requested a continuance. ERO Nov. 7, 2011, at 8:32:32- 8:45:35.  Counsel advised that she did not receive all of the evidence. After the discussion, the Court reset the trial. In December 2011, the Court held a status conference and discussed with Counsel and Garcia a method of allowing him to review the audiotapes independently. ERO Dec. 6, 2011, at 1:21-1:26:35. According to the status conference of January 3, 2012, Counsel described the process of enabling Garcia to review the audiotapes and her efforts to discuss the audiotapes with Garcia on a daily basis. ERO Jan. 3, 2012, at 11:07-11:39:39. The evidence, separate and apart from Counsel's affidavit contradicts Garcia's claims.

c. Failure to file pretrial motions

Garcia argues that counsel should have filed pretrial motions and her failure to do so fell below reasonable professional standards. Garcia claims counsel should have, but did not file motions:  1) to request witness statements or grand jury testimony, 2) for a Bill of Particulars seeking detailed evidence including *Brady* material, 3) to challenge the legality of the wiretaps, 4) to dismiss the indictment, and 5) to suppress the wiretap recordings.

The filing of pretrial motions, including motions to suppress, falls within the range of trial strategy. *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir.1984)). '"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)).

Garcia claims counsel should have filed a motion for a bill of particulars. A bill of particulars is designed to apprise the defendant of the charges against him with sufficient detail to allow him to prepare his defense. *See United States v. Kirkham*, 129 Fed. App'x. 61, 71 (5th Cir. 2005) (per curiam) (designated unpublished) (citing *United States v. Montemayor*, 703 F.2d 109, 117 (5th Cir. 1983)). A defendant has no right to a bill of particulars. *See United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980). Discovery is not a permissible goal of a bill of particulars. *United States v. Davis*, 582 F.2d 947, 951 (5th Cir.1978). In this case, Garcia had access to every wiretap conversation involving all fourteen co-defendants. He knew who was involved with his drug conspiracy through that evidence. The conspiracy lasted only a relatively short period of seven months. Garcia has not identified any prejudice to him as a result of counsel's failure to request a bill of particulars.

Garcia provides no factual basis for his claim that counsel's failure to request prior statements[2] or grand jury materials constituted ineffective assistance. The Court notes that all of

---

[2]  18 U.S.C. § 3500 governs the production of government witness statements. Counsel is not entitled to copies of witness statements until after the witness testified on direct examination. Section 3500 reads in pertinent part,

> (a) In any criminal prosecution brought by the United States, *no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness* (other than the defendant) *shall be*

the government's witnesses were law enforcement personnel from whom it is unlikely that the government secured statements.

Garcia also contends that counsel should have filed a motion to dismiss the indictment. Garcia does not state any basis for such a motion, other than the previously addressed speedy trial complaint.

Garcia does not state the grounds on which counsel should have challenged the legality of the wiretaps. Agent Teed testified that the investigation at issue went on for three years. In March 2010, the government obtained a warrant to intercept Buchot's cell phone and text messages that lasted from March 26, 2010, until April 23, 2010. Garcia provides no facts to support his claim that there was any basis for counsel to move to suppress the wiretap evidence against him.

Garcia's claims regarding pretrial motions are conclusory and do not state a constitutional violation. *Woods*, 870 F.2d at 288 n. 3; *see also Jones*, 614 F.2d at 82 (failure of movant to state specific facts, "is insufficient to state a constitutional claim.").

4. *Jury selection*

Garcia criticizes counsel's performance during jury selection and asserts that her omissions constituted ineffective assistance of counsel. Garcia claims counsel exercised no challenges for cause, failed to question jurors, failed to exercise peremptory challenges, failed to

---

> *the subject of subpoena, discovery, or inspection until said witness has testified on direct examination* in the trial of the case.
> (b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

*Id.* (emphasis added)

request additional peremptory challenges, did not request attorney conducted voir dire, and was not familiar with the Court's voir dire procedures.

Garcia complains that defense counsel did not ask jurors if they had 1) fixed opinions regarding Garcia's guilt, 2) fixed opinions regarding prison or street gang membership, or 3) familiarity with facts of the case. Regarding gang membership, the Court discussed with counsel for Garcia and the government how best to approach the issue with the jury. D.E. 594, pp. 30-31.[3] Ultimately, the Court asked, "Have any of you ever been affected by gang related activity, if any, in this community?" *Id.*, p. 31. The Court followed up with a question, "For those of you who had relatives who committed crimes, to the best of your knowledge were any of them gang

---

[3]
> 11 THE COURT: I think I'm going to have to ask
> 12 something about gangs, and I want to do it in the right way so
> 13 it doesn't upset anybody. It's too many people with drugs and
> 14 conspiracies. Don't you think, Ms. Villarreal-Kuchta? How can
> 15 I put it?
> 16 MS. VILLARREAL-KUCHTA: I agree with you. I would
> 17 suggest --
> 18 THE COURT: Are any of you familiar with gang-related
> 19 drug activity in the community? No?
> 20 MS. VILLARREAL-KUCHTA: Maybe not that. Maybe --
> 21 MR. HESS: How about in reference to conspiracy?
> 22 THE COURT: How about that? Well, I don't want to
> 23 just limit it to that either.
> 24 MS. VILLARREAL-KUCHTA: Go ahead and --
> 25 THE COURT: Tell me. Speak up so I can...
> 1 MS. VILLARREAL-KUCHTA: I think -- has anybody
> 2 either -- I guess for me there are two different questions.
> 3 Affected by --
> 4 (Voices heard off the record)
> 5 Gangs and...
> 6 THE COURT: And otherwise, have any of these
> 7 convictions been gang related? How about --
> 8 MS. VILLARREAL-KUCHTA: I think that's perfect.
> 9 THE COURT: Okay.

*Id.*, pp. 30-31.

related?" *Id*. If either question was answered "yes," the Court followed up with additional questions.[4]

The Court voir dired the jury on Garcia's constitutional rights including the presumption of innocence and the government's burden of proof. The Court excused several jurors for cause who said they would expect the defendant to put on evidence. *Id*., pp. 72, 88.

Contrary to Garcia's assertions, Counsel conducted some limited voir dire in addition to the voir dire conducted by the Court and the government. D.E. 594, pp. 85-87. Counsel also used

---

[4]
11 THE COURT: Have any of you ever been affected by
12 gang related activity, if any, in this community?
13 Thirty-five?
14 PROSPECTIVE JUROR NUMBER 35: Gangs are the ones that
15 stole our two vehicles out of our driveway.
16 THE COURT: For those of you who had relatives who
17 committed crimes, to the best of your knowledge were any of
18 them gang related?
19 Six?
20 PROSPECTIVE JUROR NUMBER 6: Yes, ma'am, it was. And
21 I have a son that's also in a gang.
22 THE COURT: Do you know what the name of the gang is?
23 PROSPECTIVE JUROR NUMBER 6: No, I'm not too sure of
24 it.
25 THE COURT: Al l right. Eleven?
1 PROSPECTIVE JUROR NUMBER 11: My husband, who has
2 been deceased for four years already, his nephews were, but I
3 wasn't close to them. They were his nephews.
4 THE COURT: Do you know what the affiliation was?
5 PROSPECTIVE JUROR NUMBER 11: One of them was -- oh,
6 the shooting where the gentleman and two children were injured.
7 I don't remember when the shooting was; it was recent, a couple
8 of years ago. But he got sent to prison.
9 THE COURT: You don't remember the name of the gang?
10 PROSPECTIVE JUROR NUMBER 11: I didn't know much. I
11 mean I just know they were my husband's nephews.
12 THE COURT: Thank you. . . .
4 PROSPECTIVE JUROR NUMBER 46: Sorry. That's okay.
5 My husband's cousins who were with -- affiliated with the drug
6 trafficking, they're a part of Texas Syndicate.
7 THE COURT: All right. Thank you.

*Id*., pp. 31-33.

challenges for cause on Jurors 12, 36, 41, 42, 45 and 48. *Id.*, pp 88-90. Counsel used four of the ten peremptory strikes allocated and had no need for additional strikes. The record contradicts Garcia's claims regarding voir dire. Furthermore, Garcia has not identified any jurors that he believes should have been struck nor has he identified any prejudice from counsel's alleged deficiencies. Garcia has failed to establish ineffective assistance of counsel during voir dire or jury selection.

     5. *Counsel's failure to object to chain of custody issues*

Garcia argues that counsel should have sought to exclude the government's evidence of the peace treaty, membership roster, and wiretap recordings based upon alleged problems with chain of custody. He does not identify any factual basis for his claim, other than that law enforcement agencies, other than federal agents, collected the evidence.

Daniel Lee Pacheco of the Corpus Christi Police Department testified at Garcia's trial that he participated in the execution of a search warrant at co-defendant Johnny Guerra's house in Corpus Christi, Texas. D.E. 595, pp. 37-38. The government offered what appeared to be a membership roster through Pacheco. The roster was recovered from Guerra's bedroom during the search. *Id.*, 40-41. Pacheco was in charge of the evidence log for the search. *Id.*

Rodney Breese, a Homeland Security agent also participated in the execution of a search warrant for Rudy Rodriguez' prison cell. *Id.*, p. 48. Breese recovered the peace treaty between RU and another prison gang from Rodriguez' cell. *Id.*

As to the wiretaps, federal law provides the manner of obtaining a wiretap and the manner in which the recording of the tapped information shall be kept and disclosed. 18 U.S.C. §

2518(8)(a), (9).[5] Agent Teed testified that the government applied for and was given a wiretap warrant for Buchot for a period of less than thirty days.

The evidence before the Court does not support Garcia's claim that counsel should have challenged the chain of custody for the peace treaty or roster. Nor has he alleged any facts that give rise to a belief that the wiretap was illegal. Garcia has not established that counsel was ineffective for failing to challenge or move to suppress this evidence.

   6. *Failure to challenge Teed's qualifications as expert witness*

Agent Teed testified as an expert witness on the RU gang in the Corpus Christi area. Garcia argues that counsel should have challenged Teed's qualifications to offer expert

---

[5] Provisions to maintain the integrity of the evidence include:

> (8)(a) The contents of any wire, oral, or electronic communication intercepted by any means authorized by this chapter shall, if possible, be recorded on tape or wire or other comparable device. *The recording of the contents of any wire, oral, or electronic communication under this subsection shall be done in such a way as will protect the recording from editing or other alterations. Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions. Custody of the recordings shall be wherever the judge orders.* They shall not be destroyed except upon an order of the issuing or denying judge and in any event shall be kept for ten years. Duplicate recordings may be made for use or disclosure pursuant to the provisions of subsections (1) and (2) of section 2517 of this chapter for investigations. The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire, oral, or electronic communication or evidence derived therefrom under subsection (3) of section 2517. . . .
>
> (9) The contents of any wire, oral, or electronic communication intercepted pursuant to this chapter or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in a Federal or State court *unless each party, not less than ten days before the trial, hearing, or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved.* This ten-day period may be waived by the judge if he finds that it was not possible to furnish the party with the above information ten days before the trial, hearing, or proceeding and that the party will not be prejudiced by the delay in receiving such information.

*Id.* (emphasis added).

testimony on the ground that "the majority of Raza Unida members are of Mexican-American cultural background, lived in the barrio (neighborhood) most of their lives, and spoke Spanish within themselves." Teed does not speak Spanish. Garcia contends that Teed's language deficiency prevented him from being an expert on RU.

Rule 702 of the Federal Rules of Evidence and its interpretive case law govern the Court's determination of expert witness status. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and methods; and
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id*. Federal courts recognize that some areas of expertise may be based on "other specialized knowledge" that is not necessarily scientific or technical. A police or other law enforcement officer may acquire relevant expertise in gangs by serving on a gang task force or by teaching other officers about gangs. *United States v. Palacios*, 677 F.3d 234, 243-44 (4th Cir. 2012) (police officer with specialized gang training who interviewed hundreds of gang member, substantial personal observation and participation in executing search warrants, properly permitted to testify regarding structure and organization of MS-13); *United States v. Roach*, 582 F.3d 1192, 1199 (10th Cir. 2009) (14 year officer assigned to Gang Intelligence Unit, much gang related training, served as instructor on gang topics qualified as expert witness on gang equipment and tools of the trade); *United States v,. Mejia*, 545 F.3d 179, 193-94 (2d Cir. 2008) (New York state Police officer for 18 years with academy training who served as member of FBI Gang Task Force for several years, listened to many hours of surveillance tapes, and interviewed

over a100 MS 13 gang members was qualified as expert on MS-13); *United States v. Griffith*, 118 F.3d 318, 322-23 (5th Cir. 1997) (DEA agent for 8 years who participated in 50 investigations including undercover work qualified agent to interpret drug jargon); *United States v. Garcia*, 86 F.3d 394, 400 (5th Cir. 1996) (district court did not abuse discretion qualifying federal agent to explain the manner in which large drug operations function).

Teed was in law enforcement for ten years before the trial. D.E. 595, p. 52. He originally trained with the CCPD and was assigned to the CCPD gang unit where he ultimately specialized in RU. Teed interviewed numerous RU members, took 250 hours of specialized gang training, taught other gang investigators, previously testified as an expert witness regarding gang activities, and served as project manager on a gang intelligence database. *Id.*, pp 53-57. Counsel took Teed on voir dire. *Id.*, pp. 69-71. Counsel established that Teed did not read or write Spanish. *Id.*, p. 71. The Court accepted Teed as an expert limited to RU in the Corpus Christi area. *Id.*, p. 72. Although familiarity with the Spanish language might have been helpful to Agent Teed, his credentials fit within the standards for expert testimony.

Teed testified about the organizational structure of RU, the rules and discipline imposed on members, and the types of tattoos worn by RU members. Teed also identified Garcia in some of the photographs, identified his gang tattoos, and identified his nickname on the gang roster recovered from his co-defendant's home.

Garcia does not state any authority for his position that counsel should have objected to Teed's qualifications on the ground that Teed does not speak Spanish. He has not established that his counsel was ineffective on this ground.

7. *Counsel's alleged failure to develop a defense theory of the case*

According to Garcia, Counsel did not develop a defense theory of the case and her failure to do so prejudiced him. During opening, counsel urged the jury to listen carefully to the evidence and to understand the evidence as it related to the conspiracy charge. D.E. 595, p. 36.

Garcia testified during trial that he was a member of RU, that he had thought about getting out of the gang, but did not want to be harmed or have his family harmed. D.E. 6-8. He further testified that a "request" from Karl Buchot was really an order that he was bound to follow as part of his membership in RU. Failure to follow an order has consequences that can be serious or deadly. *Id*., p. 9. Garcia agreed he had a number of conversations with Buchot. Most of the conversations were initiated by Buchot. *Id*., p. 11. Garcia explained the telephone calls between him and Buchot as Buchot's attempt to get Garcia involved in moving methamphetamine for RU, but Garcia claimed he was trying to avoid being personally involved, while trying to appear to be cooperative. *Id*., p. 26-27. "I wanted Mr. Buchot to believe that I had tried to do everything in my power to help him and was unsuccessful of doing so and that eventually he could leave me alone." *Id*. p. 30.

During closing, counsel argued that Garcia was afraid not to participate in gang activities, that he was innocent of the charges because although he paid lip-service to working with his co-conspirators, he did not commit an overt act and was just talking. At the end of closing arguments, Counsel urged,

> He did not join in the agreement willfully, that is, with the intent to further its unlawful purpose. Yes, the audio and the transcripts are very -- as read are very unfavorable, but think about all the evidence that you've heard, everything that has been presented to you, and I believe that at the conclusion of your deliberations you will find that, as Mr. Garcia has been telling you, he is not guilty of this crime. Guilty of others, but this crime he is not guilty of, and I ask you to so find.
> Thank you.

D.E. 596, p. 63.

Garcia's testimony was consistent with counsel's closing argument and her approach at trial. Garcia does not identify a different defense strategy that he claims counsel should have adopted. Moreover, as this Court observed during trial, Counsel appeared to have permitted Garcia to control her conduct of the defense. This claim fails.

       8.     *Failure to cross-examine key prosecution witnesses*

Garcia claims that counsel's failure to cross-examine Daniel Pacheco, a CCPD officer who was involved in the execution of a search warrant in this case, constituted ineffective assistance of counsel. Pacheco testified that during the search of co-defendant Johnny Guerra's residence that the search team found what Pacheco thought appeared to be a membership roster and a camera with SD cards. Pacheco testified that he was in charge of the evidence log. His testimony consists of three pages of transcript. Defense counsel did not cross-examine the witness. D.E. 595, pp. 37-41. Garcia does not state why he believes Counsel's failure to cross-examine the witness fell below professional standards or how he was prejudiced.

Garcia also argues that counsel should have cross-examined Agent Teed regarding his conclusions drawn from the gang treaty and the roster. Garcia further argued that counsel failed to challenge Teed's testimony. Yet throughout Teed's testimony counsel objected and her objections were often sustained, thus limiting the scope of Teed's testimony. As an example, when the government sought to have Teed testify regarding examples of crimes motivated by gang activity. Counsel objected, and the Court sustained the objection. D.E. 595, pp. 54-55. The government sought to have Teed define a gang, defense counsel again objected and her objection was sustained. *Id.*, p. 57. When Teed began to testify about the 1988 origins of Raza Unida , Counsel objected and the Court limited Teed's testimony. *Id.*, p. 58. When Teed expanded his

testimony into the various regions of Texas, Counsel objected and prevented broader testimony regarding RU activities. *Id.*, p. 62-63. Counsel also objected to the use of Agent Teed as an expert. *Id.*, p. 68.

During her cross-examination of Agent Teed, counsel demonstrated the hazards of leaving the gang and attempted to minimize Garcia's involvement with the drugs, guns and body armor found during the search of the Allencrest house by pointing out the lack of physical evidence that tied him to the searched premises, the vehicles, or living arrangements there. *Id.*, pp. 149-67.    Garcia identified the gang treaty, confirmed the meeting roster, confirmed the existence of gang rules that Teed testified about and in general agreed with much of Teed's testimony regarding the operation of RU in the Corpus Christi area, although Garcia disagreed with Teed's assessment of Garcia's role in the local gang. The record contradicts Garcia's claims.

9.    *Alleged failure to speak for Garcia at sentencing*

Before sentencing, Counsel filed objections to the PSR. D.E. 549. The objections contested offense conduct, responsibility for the drugs found during the search of the Allencrest house, importation from Mexico, and role in the offense. Had counsel's objections been sustained, Garcia's sentencing range would have been 235-293 months rather than Life imprisonment. *Id.*

During sentencing, the Court overruled the objections.  Garcia testified that he believed the drugs came from Mexico. The indictment on which the jury found Garcia guilty charged Garcia with conspiracy to possess with intent to distribute more than 500 grams of methamphetamine.  The quantity of methamphetamine found at Garcia's home was only 77 grams of methamphetamine. To convict Garcia of Count Five, the jury had to find that the

conspiracy of which Garcia was a part included the methamphetamine found at the Allencrest house. Garcia admitted he was a member of RU, that he had a gun with him at the Allencrest house and at home. He admitted the Allencrest drugs came from Mexico. *Id.*, pp. 54, 61. Garcia admitted he sold methamphetamine in smaller quantities and testified that he was one of the regular members who made up a wheel to help the rank make decisions in the Corpus Christi RU community. *Id.*, pp. 75-77.

> 7 Q All right. Well, if we look right at the page, it says --
> 8 read that for me.
> 9 A "Yeah, I tell you thing, Bro -- Brother, Chino's got some
> 10 right now. Bro, he's selling the pounds right now for 15."
> 11 Q Okay. And is that the Allencrest dope that you're talking
> 12 about?
> 13 A Yeah, that's what Mr. Ornelas was selling. Pounds, he was
> 14 offering pounds for 15,000.
> 15 Q Okay. And then Karlos says, "But is the work good?" And
> 16 then you say, "I've been selling it little by little."
> 17 A Yeah, but there was a pause there because he was asking me
> 18 if I could sell methamphetamine, sir. This call is based on
> 19 Mr. Bouchot asking me if I can sell methamphetamine or ice in
> 20 Corpus Christi and that's where all this is in reference to.
> 21 Q So --
> 22 A When I'm saying that Chino had pounds there in Corpus
> 23 Christi that he was selling them for 15, he asked me, "Yeah,
> 24 but if they're good" and I told him, "Yeah, it's good." I told
> 25 him, "I've been selling it little by little, fifties, hundreds"

*Id.*, p. 52.

Garcia's testimony supported the enhancements to Garcia's offense level. Counsel argued that Garcia had major health issues, had made bad decisions in the past with regards to his drug addiction, his gang membership, and regretted his previous bad decisions. Counsel argued for leniency. The Court sustained the defense objection to the firearm enhancement, which reduced his offense level from 47 to 45, but the change did not affect Garcia's guideline range.

Garcia does not state what counsel should have argued at sentencing, nor has he claimed how he was prejudiced or how any argument would have reasonably changed the outcome at sentencing. Garcia has not established that counsel's performance at sentencing constituted ineffective assistance of counsel.

9. *Ineffective assistance on appeal*

The Fifth Circuit Court of Appeals affirmed Garcia's conviction. The sole issue on appeal was that the evidence was insufficient. Garcia claims that counsel provided ineffective assistance on appeal by choosing the weakest argument to raise.

Appellate counsel is not required to raise every non-frivolous argument on appeal. *United States v. Williams*, 476 Fed. App'x. 1, at *1 (5th Cir. Mar. 26, 2012) (per curiam) (designated unpublished). To prevail on an ineffective assistance of appellate counsel claim, Garcia must show that the issues Garcia sought to pursue were clearly stronger than the issue counsel pursued. *Id.*; *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Garcia has not identified an issue that he claims counsel should have raised on appeal, as a result, this Court has no basis to compare the issue that was raised with the strength of the issue(s) Garcia claims should have been raised. Garcia's claim of ineffective assistance of counsel on appeal fails.

## IV. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Garcia has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Based on the above standards, the Court concludes that Garcia is not entitled to a COA on any of his claims. Reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## V. CONCLUSION

For the foregoing reasons, Garcia's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 689) is DENIED. He is also denied a Certificate of Appealability.

SIGNED and ORDERED this 31st day of October, 2014.

Janis Graham Jack
Senior United States District Judge